17-2955-cv(L)
*MVP Health Plan, Inc. v. OptumInsight, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand and nineteen.

Present:
> REENA RAGGI,
> PETER W. HALL,
> RICHARD J. SULLIVAN
> *Circuit Judges.*

---

MVP Health Plan, Inc.,

> *Plaintiff-Appellant-Cross-Appellee,*

v.                                                                              17-2955-cv

                                                                               17-3207-cv

OptumInsight, Inc.,

> *Defendant-Appellee-Cross-Appellant.*

---

| | |
|---|---|
| *For Appellant*: | ROBERTA KAPLAN, Kaplan & Company, LLP, New York, New York (John C. Quinn, Alexander J. Rodney, *on the brief*); Arthur J. Siegel, Clifford G. Tsan, Bond Schoeneck & King, PLLC, Albany, New York. |
| *For Appellee*: | KARL GEERCKEN, Alston & Bird LLP, New York, New York. |

Appeal from a judgment entered August 24, 2017 in the Northern District of New York (Sannes, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED** and OptumInsight's cross-appeal is **DISMISSED**.

MVP Health Plan, Inc. ("MVP") and OptumInsight entered into an agreement in 2012 to provide MVP with, among other things, actuarial services related to MVP's 2013 Medicare bids. The parties, who had a long-standing business relationship, developed this agreement over time through correspondence and invoices. MVP brought suit against OptumInsight alleging: (1) breach of contract; (2) negligence; (3) gross negligence; (4) negligent misrepresentation; (5) unjust enrichment; (6) quantum meruit; and (7) a claim for return of moneys paid under the parties' 2012 agreement. The district court, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissed MVP's tort claims. In so doing, it determined that this case was predicated on breach of contract, and under applicable New York law, MVP's tort claims were duplicative of the breach of contract claim such that the tort claims were not cognizable.

On cross-motions for summary judgment, the district court ruled the parties had contracted for the performance of the 2013 Medicare bid work. After a four-day bench trial, it found that OptumInsight, as part of its contract with MVP, agreed to comply with the Actuarial Standards of Practice ("ASOPS") and perform its actuarial services in a non-negligent manner. The district court concluded OptumInsight breached its agreement with MVP by "its generally negligent performance" and its

2

noncompliance with the ASOPs. *MVP Health Plan, Inc. v. OptumInsight, Inc.*, No. 1:13-CV-1578 (BKS/CFH), 2017 WL 3669558, at *14 (N.D.N.Y. Aug. 24, 2017). Finding OptumInsight's breach was the direct and proximate cause of damages suffered by MVP, the district court awarded MVP the price MVP had paid for OptumInsight's services in 2013, $332,981.44. While acknowledging that OptumInsight's breach caused MVP to lose revenues, the court ruled that the lost revenues constituted consequential damages that MVP could not recover. MVP appeals that ruling, along with the dismissal of its tort claims. OptumInsight has filed what it styles as a conditional cross-appeal and asks us to decide that appeal if we are reversing the district court's judgment. We assume the parties' familiarity with the underlying facts, the procedural history, and the arguments presented on appeal, which we describe further only as necessary to explain our decision to affirm.

### A. MVP's Tort Claims

We review *de novo* a district court's dismissal of claims under Rule 12(b)(6). *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). In doing so here, we conclude that the court did not err in dismissing MVP's claims for negligence, gross negligence, and negligent misrepresentation. Under New York law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656 (1987). The independent legal duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.* at 389. Nevertheless,

3

"[m]erely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." *Id.* at 390.

MVP asserts the district court erred in dismissing its tort claims by (1) holding that tort claims can survive alongside a contract claim only if the defendant was subject to malpractice liability or the nature of the harm implicates the public interest; (2) concluding that actuaries are subject to professional malpractice liability in New York; and (3) overlooking that New York law permits negligent misrepresentation claims where the parties are in privity with one another.

We agree with the district court's well-reasoned analysis in its decision of October 29, 2014 concluding that MVP's tort claims are duplicative of its breach of contract claim. In short, OptumInsight did not have an independent legal duty to MVP that was extraneous to the agreement, either "by law as an incident to the parties' relationship" or in light of the "nature of the injury, the manner in which [it] occurred and the resulting harm." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551–52, 583 N.Y.S.2d 957, 961 (1993). Indeed, as the district court observed under New York law, "an actuary is not a 'professional' for purposes of a malpractice cause of action." *Health Acquisition Corp. v. Program Risk Mgmt., Inc.*, 105 A.D.3d 1001, 1004, 964 N.Y.S.2d 554, 557 (2d Dep't 2013). Moreover, there is no suggestion that the breach here involved "catastrophic consequences"; resulted from "abrupt, cataclysmic occurrence"; or implicated a "significant public interest"—circumstances that might otherwise give rise to an independent legal duty under New York law. *Sommer v. Fed.*

4

*Signal Corp.*, 79 N.Y.2d at 552–53, 583 N.Y.S.2d at 962. Rather, MVP's tort claims merely assert violations of duties indivisible from the contractual obligations allegedly breached by OptumInsight precluding maintenance of MVP's tort claims. *See id.; Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d at 390, 521 N.Y.S.2d at 657. Therefore, the district court did not err in dismissing MVP's tort claims on that basis.

**B. MVP's Lost Revenues**

In reviewing a judgment of the district court following a bench trial, we review the court's factual findings for clear error and its legal conclusions *de novo. See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016). Whether the court applied the correct method in calculating damages is a question of law reviewed *de novo. See Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 109 (2d Cir. 2007). "Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003). "General damages are the natural and probable consequence of" a breach of contract. *Biotronik v. Conor Medsystems*, 22 N.Y.3d 799, 805, 988 N.Y.S.2d 527, 530–31 (2014) (quoting *American List Corp. v. U.S. News & World Report*, 75 N.Y.2d 38, 43, 550 N.Y.S.2d 590, 593 (1989)).

MVP argues that the district court erred when it ruled that MVP's lost revenues were not general damages because that lost income "was a step removed from Optum's promised performance"—which was limited to providing MVP with

5

accurate actuarial calculations and analysis. *MVP Health Plan, Inc. v. OptumInsight, Inc.*, 2017 WL 3669558, at \*16. According to MVP, New York law allows one party to recover lost revenue as general damages when that party is entirely dependent on the other party to generate revenue. We disagree.

MVP's lost revenues are not general damages because the losses claimed do not flow naturally from OptumInsight's breach, but, rather, flow from MVP's contracts with its insured members. *See Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d at 109 ("Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements.").

MVP also asserts that the district court erred in holding that because "Optum did not agree to act as an insurer for MVP's health plans or to otherwise accept liability for losses on third-party contracts," MVP could not recover its lost revenues as consequential damages. *MVP Health Plan, Inc. v. OptumInsight, Inc.*, 2017 WL 3669558, at \*17. We are not persuaded.

To recover lost revenues as consequential damages a plaintiff must show: "[1] with certainty that the damages have been caused by the breach, (2) the extent of the loss [can be proven] with reasonable certainty, and (3) it is established that the damages were fairly within the contemplation of the parties." *Tractebel Energy Mktg., Inc.*, 487 F.3d at 109. We need not address the first two elements because on the third factor, at least, MVP falls short. "To determine whether consequential damages were reasonably contemplated by the parties, courts must look to the nature, purpose

6

and particular circumstances of the contract known by the parties . . . as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made." *Bio-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 193, 856 N.Y.S.2d 505, 508 (2008) (quoting *Kenford Co., Inc. v. Cty. of Erie*, 73 N.Y.2d 312, 319, 540 N.Y.S.2d 1 (1989)).  Here, the circumstances of the contract do not suggest the parties contemplated that OptumInsight would be liable for MVP's lost revenues if OptumInsight failed to perform its obligations under the contract, nor is there any evidence to warrant the conclusion that OptumInsight otherwise assumed liability for such damages.

We have considered MVP's remaining arguments and find them to be without merit.

The judgment of the district court is **AFFIRMED**. Given our decision, the cross-appeal is moot and is hereby **DISMISSED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7